IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| RAILROAD MAINTENANCE AND INDUSTRIAL HEALTH AND WELFARE FUND, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  04-3274 |
| ELEAZAR JULEA d/b/a HOME IMPROVEMENT IRRIGATION,[1] | ) ) ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Plaintiff's Second Motion for Default Judgment (d/e 27).  Plaintiff contends that a payroll audit of the Defendant for the period from June 1, 2003, through December 31, 2004, revealed that the Defendant owes Plaintiff contributions in the amount of $349,476.00, plus audit costs of $1,600.00.  Plaintiff further contends that it is also entitled to liquidated damages in the amount of $163,757.40 as provided by the Trust Agreement.  Defendant has filed a Response to

---

[1]The record reveals that Defendant's last name is "Julca", not "Julea."

1

Plaintiff's Second Motion for Default Judgment, objecting to Plaintiff's calculation of the amount of contributions owed by the Defendant.  <u>See Defendant's Response to Second Motion for Default Judgment (d/e 28)</u> & <u>Defendant's Supplemental Response to Plaintiff's Second Motion for Default Judgment (Supplemental Brief) (d/e 33)</u>.  Defendant argues in his supplemental brief that he either owes no contributions, or only owes the Plaintiff approximately $4,860.00, plus other costs previously awarded by this Court.  After a careful review of the submissions of the parties, the Court finds that Plaintiff's Second Motion for Default Judgment cannot be granted at this time in light of the Defendant's denial of the amount of contributions owed.

The record reveals that Defendant operated two companies, one being Home Improvement Master Irrigation Company (HIMIC), which was incorporated in November 11, 2001, but dissolved in April 1, 2004, and the other being Home Improvement Master, Inc. (HIM), an Illinois corporation that has been in good standing since December 31, 1992.  According to Defendant Julca, HIMIC had no employees, and Defendant himself was President and sole shareholder of the corporation.  Defendant Julca asserts that at the time he signed the Landscape Memorandum of Agreement

2

(Landscape Agreement) at issue in this case, he signed it on behalf of HIMIC.[2]  See Exh. 1 (d/e 2), Landscape Agreement.  Contrary to Defendant's assertion, however, the Court notes that the Landscape Agreement, signed on May 12, 2003, indicates on its face that it was entered into by and between "Home Improvement Irrigation, Inc." and Local 150, International Union of Operating Engineers, AFL-CIO.  Id. Nowhere in the Landscape Agreement is HIMIC or HIM even mentioned. Defendant, however, admits that he also used the name Home Improvement Irrigation, Inc. when doing landscaping business.  The Court notes that Defendant further admits that Home Improvement Irrigation, Inc. never existed as a corporate entity.  Despite this knowledge, Defendant nevertheless signed the Landscape Agreement as the owner of Home Improvement Irrigation, Inc., and admits using the name Home Improvement Irrigation, Inc. when doing landscaping business.

    Defendant asserts that HIMIC subcontracted all landscape work to HIM, and other independent contractors.  Defendant asserts in his supplemental brief, citing the Affidavit of his accountant, John Moore, that

---

[2] Defendant Julca blames the Union for erroneously drafting the Landscape Agreement by listing Home Improvement Irrigation, Inc., not HIMIC, as a party to the Agreement.  Julca signed it as indicated, however.

"[t]he total work billed by [HIMIC] or under the name of Home Improvement Irrigation[,] Inc. from June 1, 2003 when the [Landscape] AGREEMENT was signed until the corporation was dissolved by the Secretary of State [on April 4, 2004] was $41,778.95." Supplemental Brief, p.6. According to Moore's Affidavit, however, it appears that HIMIC performed landscaping work even after its dissolution on April 4, 2004. Supplemental Brief, Exh. S-1, Affidavit of John Moore (Moore Aff.). Indeed, according to Moore's Affidavit, it appears that HIMIC performed landscaping/irrigation work until September 28, 2004. Id.

Defendant further asserts that, because there were no payroll records for HIMIC or Home Improvement Irrigation, Inc., he provided auditors with payroll records of HIM when they requested payroll records of Home Improvement Irrigation, Inc. Defendant states that the auditors were well aware that the payroll records received from Defendant were those of HIM and not those of Home Improvement Irrigation, Inc. Defendant states that the auditors used the payroll records of HIM to calculate the contributions owed by the Defendant for Home Improvement Irrigation, Inc. Defendant therefore argues that the audit erroneously reflects that all work done by HIM was covered by the Landscape Agreement for Home Improvement

4

Irrigation, Inc.

Based on the evidence presented, it is clear that contributions are owed by the Defendant. The evidence in the record reveals that Defendant did business under two names--HIMIC and HIM--but signed the Landscape Agreement as owner of Home Improvement Irrigation, Inc., an entity that never existed as a corporation. Defendant also specifically admits employing the name of Home Improvement Irrigation, Inc. when doing landscaping business. The Court finds that it is appropriate in this circumstances to attribute any landscape work done which was covered by the Landscape Agreement (Covered Work), including all Covered Work subcontracted to HIM and Covered Work performed under the name of Home Improvement Irrigation, Inc. to Defendant Julca. The Court, however, lacks information to determine what portion of the work performed by HIM during the period from June 1, 2003 through December 31, 2004, is Covered Work. Moore states in his Affidavit that "[t]he revenues generated from [HIM] for non-sprinkler work, such as boring and cable drops," during the period from June 1, 2003, through December 31, 2004, was $2,754,569.00. Moore Aff., p. 4. It is not clear whether any "boring" or "cabling" was done in connection with the landscape work. As

5

such, the Court cannot grant Plaintiff's Second Motion for Default Judgment in light of the parties dispute over the amount of damages owed by the Defendant. This matter will therefore proceed to trial as to the amount of damages.

THEREFORE, Plaintiff's Second Motion for Default Judgment (d/e 27) is DENIED. The matter will proceed to trial on the question of damages. The Court refers this matter to Magistrate Judge Charles Evans for a scheduling order.

IT IS THEREFORE SO ORDERED.

ENTER: December 12, 2006.

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE

6